CITY OF CLEVELAND, Appellant,

v.

CITY OF BROOK PARK, Appellee.*

[Cite as *Cleveland v. Brook Park* (1995), 103 Ohio App.3d 275.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67132.

Decided May 8, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 74 Ohio St.3d 1408, 655 N.E.2d 187.

*Sharon S. Jordan,* Cleveland Director of Law; *Arter & Hadden, Irene C. Keyse–Walker, Ed E. Duncan, James A. Laurenson* and *William J. Muniak,* for appellant.

*David A. Lambros,* Brook Park Director of Law; *Mansour, Gavin, Gerlack & Manos, Michael T. Gavin* and *Eli Manos; Cutler & Stanfield, Dana C. Nifosi* and *Perry M. Rosen,* for appellee.

KARPINSKI, Judge.

This action arises out of the dispute between appellant, city of Cleveland ("Cleveland") and appellee, city of Brook Park ("Brook Park"), concerning a parcel of land located within the municipal limits of Brook Park. The parcel of land at issue is approximately 14.8 acres of vacant land bearing permanent parcel No. 341–35–001 and is commonly referred to as the "Bence parcel." This parcel is adjacent to the airport and within the municipal boundaries of Brook Park. It is part of the property needed by Cleveland for the expansion and improvement of the Cleveland Hopkins Airport.

In the summer of 1993, Cleveland announced its plans to expand the airport, including the construction of a new airport runway. Brook Park was opposed to these plans.

The Brook Park City Council, on December 21, 1993, adopted a resolution regarding the alleged necessity and intent to appropriate the real property. An ordinance authorizing the law director to commence an appropriation action was passed by the Brook Park City Council on January 4, 1994. The next day, January 5, 1994, Brook Park commenced eminent domain proceedings by filing a

petition for appropriation in Cuyahoga County Common Pleas Court, Probate Division.

Two weeks later, on January 19, 1994, Cleveland bought the Bence parcel from the owner, Stacey Lynn Adams. On January 25, 1994, Cleveland filed a verified complaint for preliminary and permanent injunctive relief against Brook Park in the General Division of the Cuyahoga County Court of Common Pleas. The complaint sought to enjoin Brook Park from proceeding in the appropriation action. After a hearing, the court issued a temporary restraining order which was later extended until the completion of proceedings on the motion for preliminary injunction.

Brook Park filed a motion to dismiss alleging that the previously filed complaint for appropriation vested exclusive jurisdiction with the probate court and, therefore, the general division of common pleas court had no subject matter jurisdiction to hear the complaint for injunctive relief. The trial court granted Brook Park's motion to dismiss.

■ Cleveland filed a timely notice of appeal asserting one assignment of error:

"The trial court erred when it granted defendant-appellee's motion to dismiss for lack of subject matter jurisdiction when it had exclusive jurisdiction to rule on Brook Park's authority to take real property and a separate injunction action was permitted by law."

To decide this case we must look to the language of the R.C. Chapter 163, Appropriation of Property. This chapter was created with the enactment of the Uniform Eminent Domain Act on January 1, 1966. The purpose of this Act was to establish a uniform eminent domain procedure for all appropriations sought by public and private agencies. *Weir v. Wiseman* (1982), 2 Ohio St.3d 92, 2 OBR 644, 443 N.E.2d 152. The Constitution does not limit the jurisdiction for an appropriation proceeding. To determine which court has jurisdiction over eminent domain proceedings, one must look to the legislature. The legislature has defined "court" as used in the Uniform Eminent Domain Act to include the court of common pleas and the probate court of any county in which the property sought to be appropriated is located in whole or part. R.C. 163.01(B).

R.C. 163.08 establishes what issues the owner of the property can contest in the answer to the petition for appropriation. That statute states:

"Any owner may file an answer to such petition. Such answer shall be verified as in a civil action and shall contain a general denial or specific denial of each material allegation not admitted. The agency's right to make the appropriation, the inability of the parties to agree, and the necessity for the appropriation shall be resolved by the court in favor of the agency unless such matters are

specifically denied in the answer and the facts relied upon in support of such denial are set forth therein, provided, when taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, an answer may not deny the right to make the appropriation, the inability of the parties to agree, or the necessity for the appropriation. * * * ”

R.C. 163.09 establishes the right to a hearing on the issues raised in an answer:

“(B) When an answer is filed pursuant to section 163.08 of the Revised Code and any of the matters relating to the right to make the appropriation, the inability of the parties to agree, or the necessity for the appropriation are specifically denied in the manner provided in such section, the court shall set a day, not less than five or more than fifteen days from the date the answer was filed, to hear such questions. Upon such questions, the burden of proof is upon the owner. * * * ”

R.C. 163.08 and 163.09 mandate a hearing regarding the right and the necessity to make the appropriation “when (1) an answer is filed in the action specifically denying either the right to make the appropriation, or the necessity for the appropriation in the manner provided in R.C. 163.08, (2) facts are presented to support such denial and (3) the appropriation is not sought in time of war or other public exigency imperatively requiring immediate seizure, and is not for the purpose of building or repairing a toll-free road.” *Weir v. Wiseman, supra,* 2 Ohio St.3d at 95, 2 OBR at 646–647, 443 N.E.2d at 155.

Brook Park argues that the probate court had jurisdiction over the entire appropriation case and that the dismissal of Cleveland's separate action to enjoin the appropriation proceedings was proper. Brook Park asserts that, as a result of the Uniform Eminent Domain Act, R.C. Chapter 163, the appropriating court has jurisdiction to determine all matters concerning the appropriation. In support of this argument, Brook Park claims that R.C. 163.08 serves merely an evidentiary function by creating a presumption against the appropriating agency when the purpose of the appropriation is for the purpose of building a public road. Brook Park argues R.C. 163.08 does not limit the jurisdiction of the court in which the appropriation was filed.

Cleveland, on the other hand, contends that the dismissal of the separate injunctive action was improper. In its complaint for appropriation, Brook Park stated that one of the purposes of the appropriation is to build a public road. Cleveland argues that when the purpose of the appropriation is to build a public road, the unequivocal language of R.C. 163.08 precludes the property owner from bringing a challenge to the agency's right to make the appropriation in the appropriating court. Cleveland argues that since it cannot properly raise its

objections in the appropriating action, the only way Cleveland can contest Brook Park's authority is in a separate action to enjoin Brook Park.

Cleveland cites *Branford Village Condominium Unit Owners' Assn. v. Upper Arlington* (1983), 12 Ohio App.3d 120, 12 OBR 440, 467 N.E.2d 542, to support its position that a separate injunction action is proper. In *Branford,* the city of Upper Arlington commenced appropriation proceedings to build a service road. The property owners obtained an injunction enjoining the city from proceeding with the eminent domain proceedings. The city appealed, arguing that the separate proceeding was improper because R.C. 163.09 provides an adequate remedy to adjudicate the dispute. The appellate court disagreed with the city and affirmed the propriety of the separate injunction action. The court noted at 121, 12 OBR at 441, 467 N.E.2d at 544:

"[T]his appropriation is for a public road, and R.C. 163.08 provides: ' * * * when taken * * * for the purpose of making or repairing roads * * * open to the public, without charge, an answer may not deny the right to make the appropriation * * * or the necessity for the appropriation.' Where the issue cannot be raised in the eminent-domain proceedings, a separate injunction action may be brought to enjoin an abuse of municipal power."

*Branford Village* is directly on point with the case at hand. Both cases involve an appropriation for a public road and a property owner objecting in a separate injunctive action. We find Judge Whiteside's decision to allow a separate action to enjoin eminent domain proceedings to be correct.

Brook Park argues that the 1966 enactment of the Uniform Eminent Domain Act, R.C. Chapter 163, changed the law with regard to the issue at hand. This argument lacks merit. The case law before 1966 permitted separate injunctive actions to proceed outside the appropriating court. *Emery v. Toledo* (1929), 121 Ohio St. 257, 167 N.E. 889; *Sargent v. Cincinnati* (1924), 110 Ohio St. 444, 144 N.E. 132. The case law after 1966 continues to allow separate injunctive active actions to enjoin the appropriation proceedings. *Branford, supra; Cincinnati v. Smith* (1971), 29 Ohio App.2d 172, 57 O.O.2d 388, 279 N.E.2d 638. Moreover, we are persuaded by the scholarly research on eminent domain law which confirms that separate injunctive actions were recognized under Ohio law both before and after the enactment of the Uniform Eminent Domain Act. Kirkwood, recognized by counsel for both sides as the leading authority on the Uniform Eminent Domain Act, analyzed how this Act affected eminent domain procedure:

"It is necessary, under the new procedure, that the owner file an answer. An answer setting forth a general denial is the only form of answer that can be filed in cases involving highway projects open to the public without charge. The same is true if the appropriation for property is taken in time of war or other public exigency. If the owner desires to raise the question of the agency's right to

make the appropriation, or the inability of the parties to agree, or the necessity for the appropriation, he must file an injunction proceeding." Kirkwood, Ohio Uniform Eminent Domain Act (1966) 19, Section 8.

At oral argument, appellee's counsel acknowledged that Knepper and Frye succeeded Kirkwood as the leading authorities on Ohio eminent domain law. They state that the objections as to the right or necessity to appropriate are in the nature of affirmative defenses which are to be raised in the answer. Knepper and Frye go on to state the following:

"In two instances the statute restricts the availability of these affirmative defenses. These are (1) when the appropriation is in time of war or other public exigency, imperatively requiring immediate seizure of the property, and (2) when the purpose of the appropriation is making or repairing roads open to the public without charge. In these limited circumstances, the thrust of cases decided prior to the Ohio Uniform Act was that these issues should be determined in a separate action to enjoin the appropriation. Moreover, more recent decisions suggest the same result, not only when any of the three enumerated defenses are to be asserted, but also if other matters such as formal defects in the complaint are to be raised." Knepper & Frye, Ohio Eminent Domain Practice (1977) 21, Section 1.05.

We conclude from these authorities that the Uniform Eminent Domain Act did not change Ohio law recognizing a separate action to enjoin appropriation proceedings for the purpose of building a public road.

The history of eminent domain law demonstrates that, prior to 1966, the only issue to be decided in an appropriation proceeding was the valuation of the property. *Emery* and *Sargent, supra.* Before 1966, other issues, such as the necessity for the appropriation, were determined to be political questions and would not be disturbed by the appropriating court absent fraud, bad faith, or an abuse of discretion. *Shepard Paint Co. v. Bd. of Trustees* (1950), 88 Ohio App. 319, 45 O.O. 109, 100 N.E.2d 248; *Giesy v. Cincinnati, Wilmington & Zanesville RR. Co.* (1854), 4 Ohio St. 308; *Emery* and *Sargent, supra.* While consolidating eminent domain proceedings, the Uniform Eminent Domain Act expanded the number of issues a property owner may raise. For example, now under R.C. 163.08, a property owner can contest the agency's right to appropriate or the necessity for the appropriation. While extending the possible defenses the property owner may raise, R.C. 163.08 further specifies three instances in which the property owner cannot challenge the agency: war, public exigency, or the building of a public road.

We find the language of R.C. 163.08 to be clear and unequivocal. It specifically prevents the property owner from challenging the authority of the

appropriating agency when the building of a public road is a stated purpose of the appropriation. Accordingly, we hold that property owners, when denied a right to raise their defenses in the appropriating court, must be allowed to proceed in a separate action to enjoin the proceedings in the appropriating court. In the case at bar, the probate court, being the appropriating court, has no subject matter jurisdiction over the question of whether Brook Park has the authority to appropriate the land at issue for the purpose of constructing a public road. That question can be answered only in a separate action to enjoin the appropriation proceedings. In this action, the common pleas court, general division, has exclusive jurisdiction to determine the limited question of Brook Park's right to appropriate and the necessity for appropriating the land to build a public road.

The trial court's granting of Brook Park's motion to dismiss is reversed. This cause is remanded for proceedings consistent with this order.

*Judgment reversed and cause remanded.*

PATRICIA ANN BLACKMON and HARPER, JJ., concur.